**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Edward Ripley MAXWELL, Appellant.**

Superior Court of Pennsylvania.

Argued May 22, 2007.

Filed Aug. 28, 2007.

Kirk J. Henderson, Pittsburgh, for appellant.

Amy E. Constantine, Asst. Dist. Atty. and Michael W. Streily, Deputy Dist. Atty., Pittsburgh, for the Com., appellee.

BEFORE: HUDOCK, TODD and TAMILIA, JJ.

OPINION BY HUDOCK, J.:

¶ 1 This is an appeal from the judgment of sentence imposed upon Appellant after his probation was revoked. We affirm.

¶ 2 Appellant originally entered a guilty plea to one count of indecent assault and one count of corruption of minors as a result of his inappropriate contact with the ten-year-old female victim.[1] At the time of sentencing, defense counsel informed the court that, given Appellant's history of voyeurism, it was important to continue mental health treatment. Thus, at the

---

1. 18 Pa.C.S.A. §§ 3126 and 6301, respectively. As part of the plea bargain, the Common- wealth withdrew a charge of aggravated indecent assault. 18 Pa.C.S.A. § 3125.

indecent assault count, the trial court sentenced Appellant to eighteen months of intermediate punishment, with electronic monitoring, during which time he was to be supervised and he was to maintain any course of treatment that he was undergoing. The court further specified that Appellant was to continue taking medication and participate in any evaluations to assess his voyeurism and pedophilia. He was also ordered to comply with any plan of recommended counseling. The effective date of the eighteen-month intermediate punishment (IP) sentence was June 6, 2003. After expiration of the IP sentence, Appellant was to begin a consecutive sentence of three and one-half years of probation. The court advised Appellant that if he violated the terms of his sentence, he could be incarcerated for ten years. He was to have no contact with the victims and/or their families except for arrangements the parties made regarding custody and supervision.[2]

¶3 On November 25, 2005, Appellant appeared before the trial court after violating his probation. He had been twice discharged from the sex offender rehabilitation program for failing to acknowledge his mental health issues and was thus guilty of technical probation violations. At the hearing, the trial court detained Appellant in the Allegheny County Jail. Appellant appeared for his probation violation hearing on January 23, 2006. The Commonwealth recommended that Appellant's probation be revoked and that he be given a state sentence. It was also noted that Appellant was entitled to twenty-six days of credit for the time he spent in the county jail.

¶4 The trial court stated that it considered the guideline ranges for Appellant's sentence, as well as the statements of counsel, the probation violation report, the letters from Appellant's treating mental health professionals, the fact that Appellant was unwilling to make an effort at rehabilitation, and the seriousness of the offense. The court then revoked Appellant's probation and sentenced him to two and one-half to five years of incarceration for the indecent assault conviction.[3] The court acknowledged its reasons for departing from the standard range of the guidelines and advised Appellant of his post-sentence rights. The court noted that Appellant was entitled to credit for any time he already served. This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

¶5 Appellant raises the following issue on appeal: "Is a defendant entitled to credit for time served for successfully completing a *sentence* of electronic monitoring?" Appellant's Brief at 4. Appellant asserts that, if he is not given credit for the time served for the intermediate punishment, his sentence to two and one-half to five years of imprisonment for indecent assault would be illegal because, in effect, he could serve up to six and one-half years for a first-degree misdemeanor, when the statutory maximum is five years. The parties acknowledge that, although Appellant did not raise this claim in the trial court, it is properly before us because the claim involves the legality of the sentence imposed and, therefore, is non-waivable. *Commonwealth v. Tout–Puissant*, 823 A.2d 186, 188 (Pa.Super.2003). As this Court recently has reiterated: "The issue of whether a sentence is illegal is a ques-

---

2. At the corruption of minors count, the court sentenced Appellant to a consecutive term of five years of probation. This sentence is not at issue on appeal.

3. The court also reimposed a consecutive five-year term of state-supervised probation for the corruption of a minor conviction.

tion of law; therefore our task is to determine whether the trial court erred as a matter of law and, in doing so, our scope of review is plenary." *Commonwealth v. Evans,* 901 A.2d 528, 536 (Pa.Super.2006) (citations omitted).

¶ 6 In support of his claim that he should receive credit for time served on electronic monitoring, Appellant distinguishes our Supreme Court's recent decision in *Commonwealth v. Kyle,* 582 Pa. 624, 874 A.2d 12 (2005), which held that a defendant may not earn credit for time served on electronic monitoring during release on bail. Appellant asserts that his period on electronic monitoring was part of his sentence for indecent assault, not a conditional release on bail or parole. Thus, Appellant contends that the concern expressed by the high court in *Kyle, i.e.,* if credit was granted for pre-trial electronic monitoring, trial courts would be hesitant to grant it, is not present in his case because the trial court already determined that total confinement was unnecessary and that the appropriate sentence was electronic monitoring followed by a probationary term.

¶ 7 Appellant further asserts that the crucial fact in his case is that he successfully completed the intermediate punishment portion of his sentence for indecent assault. According to Appellant, had he violated the terms of the electronic monitoring portion of his sentence, it could have been revoked and he could have been sentenced "to anything up to and including the statutory maximum. Completing the sentence, however, removed the conditional nature of the sentence and made it final. Once it was final, credit has to be awarded for it." Appellant's Brief at 10. We cannot agree.

¶ 8 In his brief, Appellant quotes 16B West's Pa.Prac., Criminal Practice section 31:30 (2006) for the proposition that:

"Whether in-home electronic monitoring imposed pursuant to a sentence of intermediate punishment qualifies a defendant for sentence credit remains an open question." Appellant's Brief at 12. We agree that this precise issue has yet to be addressed directly by the appellate courts in Pennsylvania. However, our Supreme Court has determined that time spent in electronic monitoring does not constitute "time spent in custody" for purposes of giving credit for time served against an actual term of incarceration. We do not find that conclusion changes, because the monitoring occurred at a different stage of the criminal process. If elective monitoring is not "time spent in custody," it matters not whether it was imposed by a sentence or a condition of bail.

¶ 9 Section 9760 of the Sentencing Code provides that a defendant is entitled to credit for "time spent in custody." As this Court has recently summarized:

The easiest application of [42 Pa.C.S.A. § 9760(1)] is when an individual is held in prison pending trial, or pending appeal, and faces a sentence of incarceration: in such a case, credit clearly would be awarded. However, the statute provides little explicit guidance in resolving the issue before us now, where [the defendant] spent time [somewhere other] than in prison. This difficulty results in part from the fact that neither Section 9760, nor any other provision of the Sentencing Code, defines the phrase "time spent in custody." The difficulty is also a function of the fact that there are many forms of sentence, and many forms of pre-sentencing release, which involve restrictions far short of incarceration in prison.

* * *

The plain and ordinary meaning of imprisonment is confinement in a correc-

tional or similar rehabilitative **institution[.]**

*Commonwealth v. Fowler,* 2007 PA Super 219, 930 A.2d 586, 595–96 (2007) (*quoting Kyle,* 874 A.2d at 17). Indeed, Pennsylvania appellate courts consistently have interpreted section 9760's reference to "custody" as confinement in prison or another institution. *See e.g., Commonwealth v. Kriston,* 527 Pa. 90, 588 A.2d 898 (1991);[4] *Commonwealth v. Shartle,* 438 Pa.Super. 403, 652 A.2d 874 (1995), appeal denied, 541 Pa. 637, 663 A.2d 690 (1995); *compare Commonwealth v. Conahan,* 527 Pa. 199, 589 A.2d 1107, 1109 (1991) (distinguishing, for purposes of sentencing credit, between time served in an institutional setting from time spent in a home monitoring program).

¶ 10 Most recently, in *Kyle, supra,* the Supreme Court reiterated that electronic home monitoring constituted neither imprisonment nor custody such that credit against a sentence of incarceration was warranted. In *Kyle,* a jury found the defendant guilty of driving under the influence. He was permitted to remain on bail pending sentencing with the condition that he maintain alcohol counseling and refrain from consuming alcoholic beverages. On September 6, 2000, the trial court imposed a structured sentence of two years in a county intermediate punishment program. Pursuant to this sentence, the defendant was to serve the first two months in prison at a prerelease program, with eligibility for in-home electronic monitoring for the last fifteen days at the pre-release center. He was also ordered to undergo treatment and to continue counseling. The defendant was granted bail pending his appeal to this Court, with the condition that he refrain from drinking alcoholic beverage.

Subsequently, the Commonwealth filed a petition to revoke the defendant's bail because he had violated this condition. After a hearing, the Commonwealth and the defendant agreed to the defendant's placement within the county's intensive supervised bail program that incorporated home confinement with electronic monitoring.

¶ 11 On August 6, 2001, this Court affirmed the defendant's drunken driving conviction, but the defendant stayed on electronic monitoring until August 20, 2001, a total of 268 days. Thereafter, the defendant filed a motion with the trial court seeking clarification of his sentence and requesting credit for the 268 days he served under electronic monitoring against the two-month incarceration segment of his sentence. The trial court denied the request for time credit, and the defendant again appealed to this Court. Subsequently, the defendant filed a petition for postconviction relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. sections 9541–9546, in which he sought the same sentencing credit. The PCRA court denied the petition on November 27, 2001. Further, the court also denied bail pending the defendant's appeal from the denial of his PCRA petition and ordered him to begin serving his sentence on December 28, 2001.

¶ 12 On November 28, 2002, the defendant filed an appeal to this Court and filed an application for bail. On December 10, 2001, he reported to the county prison to begin serving his sentence, but on December 21, 2001, this Court ordered that the defendant be released on reasonable bail pending his PCRA appeal. In accordance

4. In *Kriston, supra,* although our Supreme Court specified that electronic monitoring does not constitute custody for purpose of credit against a term of incarceration, the high court found that the defendant, as a matter of equity, should receive such credit because prison authorities had assured him he would receive such credit. Appellant has made no such allegation in this case.

with our directive, the defendant was released from custody on December 27, 2001.

¶ 13 In his PCRA appeal, the defendant asserted that he should receive credit, pursuant to 42 Pa.C.S.A. section 9760, for the 268 days he was released on bail subject to electronic monitoring at his home. To support this claim, the defendant cited to our Supreme Court's decision in *Commonwealth v. Chiappini,* 566 Pa. 507, 782 A.2d 490 (2001), in which a divided Court held that a defendant is entitled to credit against his sentence for time served on a home electronic monitoring program because such a program constituted "custody." The Commonwealth countered that the lead opinion in *Chiappini,* which determined that participation in a home monitoring program was the equivalent of "custody" for purposes of sentencing credit, did not garner majority support. In fact, four of the seven justices had concluded the opposite.

¶ 14 On April 8, 2003, this Court, in an unpublished memorandum, remanded the case to the trial court so that that court could hold a hearing, consistent with the holding of our *en banc* decision in *Commonwealth v. Vanskiver,* 819 A.2d 69 (Pa.Super.2003) (*en banc*), (which had interpreted our Supreme Court's decision in *Chiappini*), to determine whether the conditions imposed by the defendant's county electronic home monitoring system were sufficiently restrictive to warrant time credit. *Commonwealth v. Kyle,* 828 A.2d 399 (Pa.Super.2003). The Commonwealth filed a petition for allowance of appeal and our Supreme Court granted the petition so that it could determine "if sentencing credit is due under Section 9760 for time spent at home electronic monitoring as a condition of release on bail pending appeal." *Kyle,* 874 A.2d at 15.

¶ 15 The high court in *Kyle* first stated that, because the "issue of whether an individual is entitled to sentencing credit against a term of incarceration for time spent on bail release subject to electronic monitoring is primarily one of statutory construction," its review was plenary, and it was not, therefore, bound by the legal conclusions of this Court or the trial court. *Kyle,* 874 A.2d at 17. In reaching its ultimate conclusion that time spent on home monitoring as a condition of bail cannot, as a matter of law, be credited toward a defendant's prison sentence, our Supreme Court referred to previous decisions in order to demonstrate that, "for more than a decade," Pennsylvania appellate courts have determined that, as a matter of statutory construction, offenders are not entitled to sentencing credit for time spent on home monitoring programs. *See Kyle,* 874 A.2d at 17–18 (discussing *Kriston, supra; Conahan, supra; Shartle, supra*). Moreover, in *Kyle,* the high court specifically disapproved of the case-by-case approach it had previously espoused in its plurality decision in *Chiappini, supra,* as well as the same approach announced by this Court in *Vanskiver, supra.*

¶ 16 In the cases relied upon by our Supreme Court in *Kyle* (*Kriston* and *Shartle*), there is no difference in treatment between time spent on electronic monitoring while on bail and time spent on electronic monitoring in any other stage of the criminal justice process. *See Kriston,* 588 A.2d at 900–01 (holding that time already spent in an electronic monitoring program, once the defendant already began serving his sentence, should not be counted toward a mandatory minimum sentence); *Shartle,* 652 A.2d at 877 (holding that the defendant should not receive credit against his sentence for time spent on electronic monitoring prior to a preliminary hearing). As stated in *Kyle,* "[t]his Court has emphasized that, because home release on electronic monitoring does not constitute cus-

tody, credit should not be awarded for it toward a prison sentence." *Kyle,* 874 A.2d at 18.

¶ 17 Although, admittedly, the high court in *Kyle* decided the electronic monitoring/time credit issue in terms of bail release, a subsequent decision in which it has relied on *Kyle* indicates that Appellant should not receive credit for time served for the electronic monitoring portion of his sentence. In *Booth v. Pennsylvania Board of Probation and Parole,* 866 A.2d 1189 (Pa.Cmwlth.2005), the Pennsylvania Board of Probation and Parole (the Board) released the petitioner, on February 11, 2002, to parole from an eighteen-year sentence for murder. Under the terms of his parole, the petitioner was required to reside for at least six months at a treatment center, which he did successfully, and then, on September 6, 2002, was released to an approved residence. The Board also required the petitioner to wear an electronic monitoring device for thirty days for November 13 through December 13, 2002, during which time he was also to comply with curfew and be inside his home for a portion of each day. Apparently, the petitioner also successfully completed these terms.

¶ 18 At the time of his parole, the petitioner's sentence was set to expire on January 16, 2006. As a condition of his parole he was to abstain from drinking alcohol. However, on March 16, 2003, the petitioner was arrested for driving under the influence. Although he posted bail on March 26, 2003, he remained in jail on the Board's detainer. On May 20, 2003, the Board revoked parole due to the petitioner's technical violation of drinking alcohol. On January 21, 2004, the petitioner pled guilty to the drunken driving charge and was sentenced to six months of county incar-

ceration. He was immediately paroled. On May 10, 2004, after a hearing, the Board revoked the petitioner's parole as a direct violator and recalculated the maximum term for his eighteen-year state sentence to be March 1, 2007. This determination did not give the petitioner credit for time he served on the thirty-day electronic monitoring.

¶ 19 The petitioner filed an administrative appeal and petition for administrative review on May 27, 2004, arguing that the Board erred by not giving him credit for the thirty days of electronic monitoring he completed. He also claimed that his 2004 drunken driving conviction had retroactively invalidated his May 20, 2003, recommitment as a technical violator for consuming alcohol on March 13, 2003. The Board denied the petition. On appeal, the petitioner's counsel pursued these same two claims. The Commonwealth Court concluded that the petitioner was entitled to a hearing regarding his claim of time credit and remanded the case. The Board appealed to the Pennsylvania Supreme Court. Although the high court did not hear argument on the case, it issued a per curiam order granting the Board's petition for allowance of appeal and reversed the Commonwealth Court's remand order. In so doing, our Supreme Court specifically cited *Kyle, supra,* as authority for its ruling. *Booth v. Pennsylvania Board of Probation and Parole,* 583 Pa. 429, 879 A.2d 156 (2005).

¶ 20 By referencing *Kyle* in *Booth,* our Supreme Court has indicated that a petitioner on probation or parole could not seek credit against his or her newly imposed sentence of incarceration based upon time spent on electronic monitoring, even if he or she had successfully completed that portion of his or her parole.[5] In

**5.** We are aware that our Supreme Court has

granted allowance of appeal in *Common-*

fact, subsequent decisions from the Commonwealth Court have interpreted the *Booth* per curiam order in just such a manner. *See Johnson v. Murray*, 888 A.2d 28 (Pa.Cmwlth.2005) (citing *Kyle* and *Booth* and holding that electronic home monitoring was not "custody" for purposes of calculating jail credit; petitioner was not entitled to credit of more than six months for time spent in home monitoring program as a condition of his release on parole); *Canty v. Pennsylvania Board of Probation and Parole*, 887 A.2d 831 (Pa. Cmwlth.2005) (same). Finally, in *Commonwealth v. Birney*, 910 A.2d 739 (Pa.Super.2006), the defendant petitioned for credit for the time she spent on electronic monitoring as a condition of her parole. This Court, after reiterating the history of how this Court has considered the issue, referenced *Kyle, supra,* for the proposition that the high court therein "unconditionally held that time spent subject to electronic monitoring at home is not time spent 'in custody' for purposes of credit toward a prison sentence." *Birney*, 910 A.2d at 741.

¶ 21 In his brief, Appellant asserts:

The few post-*Kyle* cases have dealt with situations involving electronic monitoring as a condition of parole. *See [Birney, supra,* and *Canty, supra].*

Those cases are different because the electronic monitoring was an agreed-upon condition of release from incarceration. In [Appellant's] case, it was a sentence imposed by the trial court. The question for this case, thus, is whether any difference exists between

electronic monitoring for bail release [or while on probation and parole] and electronic monitoring as part of a sentence that has been successfully completed.

Appellant's Brief at 12–13. Contrary to Appellant's assertions on appeal, we conclude that no difference exists. To accept Appellant's argument would mean that, inconsistently, electronic monitoring may or may not constitute credit for time served "in custody" depending upon the time at which the trial court or the probation/parole board decides to attempt to employ this alternative to actual incarceration. In Appellant's case, rather than incarceration, the trial court attempted to permit Appellant to be at home with electronic monitoring while he continued his mental health treatments and counseling. The fact that Appellant completed this term of his sentence, but later had the probationary term of his sentence revoked, does not transform this prior period as "time spent in custody." Appellant's argument is that, simply because he completed his conditional sentence and it became "final," credit is mandated. Appellant's Brief at 16. He cites no authority for this proposition.[6]

¶ 22 According to Appellant, the trial court in his case "already has decided that total confinement is unnecessary by sentencing [him] to electronic monitoring" as part of his split sentence of intermediate punishment and probation. Appellant's Brief at 14. Our review of the certified record reveals quite the opposite. It is clear from this review that the trial court fashioned such a sentence at the urging of

---

*wealth v. Dunlap*, 846 A.2d 674 (Pa.Super.2004) (*en banc*), to determine whether a per curiam order, which cites a prior decision as its basis for reversal, has precedential value. *Commonwealth v. Dunlap*, 587 Pa. 510, 901 A.2d 982 (2006).

**6.** Appellant does cite to *Commonwealth v. Long*, 533 Pa. 388, 625 A.2d 630, 636 (1993),

for the proposition that, "since a defendant has completed his sentence, double jeopardy would require that the defendant receive credit for that sentence in any subsequent new trial." Appellant's Brief at 16. While we do not take issue with this statement of the law, *Long* did not involve the issue of credit for time spent on electronic monitoring.

defense counsel so that Appellant could obtain the treatment that he needed. As it turned out, however, Appellant failed miserably in this treatment, even though he completed his eighteen-month term of home monitoring. To now reward Appellant for this failure by giving him credit against the sentence imposed once his probation was revoked would clearly contradict the "decade-long" case law in this area as established by our Supreme Court. Thus, as Appellant's claim regarding the alleged illegality of his sentence is without merit, we affirm his judgment of sentence.

¶ 23 Judgment of sentence affirmed.